IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                       Criminal No. 3:08cr82

MARK LYNN

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's REPLACEMENT MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) & (c)(2) (ECF No. 286) ("Replacement Motion"); the United States' Opposition to Defendant's Motion for Compassionate Release (ECF No. 291); and the DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS REPLACEMENT MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) & (c)(2) (ECF No. 293). Having reviewed those documents as well as the materials submitted with the Replacement Motion (ECF No. 286), the Presentence Report (the "PSR"), and the Worksheet in Response to Motion for Compassionate Release (ECF No. 299), the Court concludes that further briefing is required and, therefore, the REPLACEMENT MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) & (c)(2) (ECF No. 286) will be denied without prejudice and Lynn may file a Second Replacement Motion for Compassionate Release.

## BACKGROUND

Mark Lynn pled not guilty to charges of: (1) conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846 and 851 (Count One); and (2) possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 851 (Count Two). The jury found him guilty of both counts on August 5, 2008. On November 7, 2009 Lynn was sentenced to a term of 396 months imprisonment.

On appeal, the case was remanded for resentencing because the explanation of the imposed sentence was insufficient. At the time of resentencing and now, the statutory sentence range for each offense is ten years to life to run concurrently. The guideline period of incarceration at the time of resentencing was 360 months to life precipitated largely by the fact that Lynn was convicted of a controlled substance offense and had previous felony convictions for (i) a controlled substance offense and (ii) a crime of violence conviction. (Presentence Report, ECF No. 243, ¶¶ 49 and 85). Because the Government filed a motion for enhancement under 21 U.S.C. § 851, a mandatory minimum sentence of 120 months was required.

2

The circumstances of the offense are relatively simple and are set forth in the Presentence Report (ECF No. 243, ¶ 9). In sum, Lynn and his retained driver, Tavarras Rhodes, were stopped while travelling along Interstate 95 in Virginia. A search of the vehicle ensued and the search yielded 108.3 grams of heroin, 3.143 grams of marijuana and heroin packaging materials. After having been properly warned of his Miranda rights, Lynn told the state troopers that he and Rhodes had made the same trip to New York twice a month for the past five to six years to bring back drugs. According to the Presentence Report, Lynn was held responsible for relevant conduct purposes for heroin weight of 108.3 grams.

The essence of Lynn's motion is that the career offender enhancement is no longer valid because one the two predicate convictions (his drug distribution offense in North Carolina in 1999 (possession with intent to sell and deliver heroin) (ECF No. 243, ¶ 36) would no longer qualify as an offense for career offender determination. For that contention, Lynn relies on the Fourth Circuit's decisions in United States v. Campbell, 22 F.4th 438 (4th Cir. 2022) and United States v. Locklear, 2022 U.S. App. LEXIS 19588 (4th Cir. July 15, 2022) (which was based on Campbell).

Lynn then argues that a change in sentencing law that occurred after sentencing (whether or not retroactive) that would result in a dramatically lower sentence (because he would no longer be a

3

career offender) is a basis for compassionate release. For that proposition, Lynn cites the Fourth Circuit's decision in United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). He further points out that, under McCoy, compassionate release can be appropriate if there is a gross disparity between the defendant's sentence at the time of conviction and the sentence that would be imposed under current law because that disparity and the change in the law represent extraordinary and compelling reasons for granting compassionate release.

Additionally, Lynn argues that compassionate release is supported by the fact that, while in prison these past 15 years he has demonstrated rehabilitation and that his PATTERN score (an indication of dangerousness while in prison) is low. To that end, he shows that he has been employed in the UNICOR program, worked as an orderly, enrolled in a variety of cognitive behavioral therapy programs designed to help change criminal thinking, and programs to address recidivism. Lynn does not otherwise address the factors under 18 U.S.C. § 3553(a) in his opening brief. However, in the reply brief (ECF No. 293) Lynn mentions that statute, but only to augment his argument that his post-offense rehabilitation resulted in FSA[1] time credit assessment because of

---

[1] Fair Sentencing Act.

4

his continued "programming and work ethic." So, according to Lynn, that assessment further supports his contention that he "would not pose a danger to the community."

The United States opposes relief arguing principally that the entire motion is foreclosed by the decision in United States v. Ferguson, 55 F.4th 62 (4th Cir. 2022). As an alternative, the United States argues that "it simply cannot be the case that any reduction in a guideline calculation qualifies as an extraordinary and compelling reason" and that "the stakes of defendant's guidelines argument are much lower than the decades of additional incarceration at issue in McCoy." (ECF No. 291, p. 16). The United States does not address the Section 3553(a) factors or the rehabilitation argument.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3d 784, 785 (W.D. Mo. 2019).

5

1.  **The Career Offender Argument**

The threshold of Lynn's argument is that "his conviction for possession with intent to sell and deliver heroin [ECF No. 243, ¶ 36] is no longer a 'controlled substance offense' under 18 U.S.S.G. § 4B1.2." (ECF No. 286, p. 1)  The predicate for that argument is the decision of the Fourth Circuit in United States v. Campbell, 22 F.4th 438 (4th Cir. 2022) wherein the Court of Appeals held that inchoate offenses such as attempt were inconsistent with the text of § 4B1.2 which included only completed offenses and, on that basis, found invalid a West Virginia statute because the least culpable conduct criminalized by that statute was an attempt.  Then, in United States v. Locklear, 2022 U.S. App. LEXIS 19588 (4th Cir. July 15, 2022), the Fourth Circuit applied the reasoning of Campbell to the North Carolina statute that formed the basis of Lynn's predicate conviction.  According to Lynn, the result of Locklear and Campbell was that the North Carolina offense in paragraph 36 of the Presentence Report would no longer qualify as a predicate offense for purposes of determining career offender status.

Thus, says Lynn, the consequence would be that, if sentenced today, the offense level would be 24 (rather than 26 as reflected in the original Presentence Report) and that Lynn's Criminal History Category would still be VI, resulting in a guideline range

6

of 100 to 125 months and because the Government filed an enhancement under 21 U.S.C. § 851, the sentence could not be less than 120 months.

Rounding out this argument, Lynn points out that his original sentence guideline was based on the career offender designation and the Section 851 enhancement and was 360 months to life imprisonment so there is great disparity in the sentence that would be imposed today (120-125 months) as opposed to that which was available and imposed at the time of conviction (360 months to life). That disparity, argues Lynn, warrants compassionate release under United States v. McCoy.

It is correct that, in McCoy, the Fourth Circuit authorized the court to consider changes in sentencing laws as well as considerable and great disparity in sentencing between the time of conviction and the time of the compassionate release motion when determining whether compassionate release was appropriate. The recent decision of the Supreme Court of the United States in Concepcion v. United States, 142 S. Ct. 2389 (2022), although decided under Section 404 of the First Step Act rather than Section 603, teaches that, in modification of sentences that are permitted by law, the district courts have discretion to consider changes in both fact and law. In other words, in Section 404 cases, Concepcion authorizes consideration of rehabilitation evidence

7

(fact) as well as changes in the law. There is no reason why that concept should not be applied in Section 603 cases. Indeed, McCoy teaches as much.

The response of the United States is that the decision in United States v. Ferguson, 55 F.4th 262 (4th Cir. 2022), precludes the application of McCoy to Lynn. That reading of Ferguson is just simply wrong because in Ferguson the defendant was attacking the validity of a particular count of his Indictment and the Fourth Circuit held that that attack was a collateral attack on the validity of the conviction and that it had to be addressed under 28 U.S.C. § 2255. The attempt of the United States to use Ferguson to undermine the holding of McCoy just does not stand up when the substance of McCoy is examined. Further, it certainly does not stand up in perspective of the decision in Concepcion (which, of course, pertained to Section 404 of the First Step Act and not Section 603) but, as noted above, there is no reason why the fundamental precepts announced in Concepcion would not apply to proceedings to modify sentences under Section 603.

That brings the analysis to Lynn's argument respecting disparity which is based entirely upon the view that his North Carolina drug conviction would no longer be counted as an offense that can serve as the predicate for a career offender adjustment. That argument is founded upon United States v. Locklear, 2022 U.S.

8

App. LEXIS 19588 (4th Cir. July 15, 2022) which was based entirely on the decision of the Fourth Circuit in United States v. Campbell, 22 F.4th 438 (2022). However, Campbell, the lynchpin of Lynn's argument, has been significantly limited to its particular facts by the decisions in United States v. Groves, 65 F.4th 166 (2023) and United States v. Davis, 75 F.4th 428 (2023) and United States v. Miller, 75 F.4th 215 (2013). Thus, for the reasons explained in United States v. Brown, 2023 WL 4138246 (June 23, 2023), Locklear is of doubtful validity because it depends entirely upon Campbell. And, Locklear is not precendential because it is an unpublished decision.

Locklear is of no precedential effect in determining whether Lynn's North Carolina conviction is counted toward the application of the career offender enhancement. But, Locklear may be assessed in addressing that point, and Locklear is based on Campbell. And, because Groves, Davis, and Miller operate to limit Campbell, those decisions also must be considered in assessing the North Carolina statute which forms the basis for the enhancement challenged by Lynn.

The briefs do not address the effect of Groves, Davis, and Miller on Campbell (and hence on Locklear). As Brown illustrates, that analysis is an important one. However, it is not addressed by either party. Accordingly, the parties will be given an

9

opportunity to do so.  Then, the Court can decide Lynn's principal argument.

### 2. The Disparity Issue

That briefing will also inform analysis of the rather remarkable argument made by the United States that there is no resemblance between the disparity in sentences under consideration in McCoy and the disparity here.  If the North Carolina conviction is covered by Campbell (by way of Locklear), the United States will have to better explain its position because, by any measure, the difference between 360 months in prison and 120 to 125 months is significant and would be so considered even though it is not as drastic as some of the disparities before the Court in McCoy.

### 3. The Section 3663(a) Factors

That leaves for consideration the Section 3553(a) factors. The first is the nature and consequences of the offense. It is without question that the offense here is an extremely serious one in and of itself.  It is even more serious when one considers the context of the offense of conviction.  In particular, this journey to procure drugs was only one of approximately 120 like journeys that Lynn and Rhodes had carried out over five or six years before they were finally caught.  So, the offense of conviction is no small aberrational conduct on the part of the defendant, but

10

instead part of a longstanding disobedience of the law in which vast amounts of heroin were delivered into the Commonwealth for distribution to her citizens and impacting their lives.

Second, the nature and circumstances and characteristics of the defendant also must be considered. According to the Presentence Report, Lynn "considered himself to have been privy to a good family life, growing up in a low income neighborhood." (ECF No. 243, § 50). Although his father was a drug addict and his parents separated as a consequence, his mother's significant other treated Lynn as a father would treat a son. Lynn also had a close relationship with his mother and his siblings and has never suffered from, or been treated for, any mental or emotional health problems. (ECF No. 243, ¶¶ 52 and 60) Lynn, however, has had a great deal of difficulty with drug use, preferring to use crack cocaine. Nonetheless, he seems to have been employable and employed for two or three years before he was arrested and at one time owned his own business. (ECF No. 243, ¶¶ 62-64, 68, 71, 72).

A significant part of the characteristics and history of the defendant are found in consideration of his criminal history. And, it is a lengthy history. Lynn has a significant history of criminal activity beginning at age 16 (Presentence Report, ECF No. 243, pp. 8-10) But that criminal conduct pales in connection with his adult criminal convictions which are set forth in detail in

11

the Presentence Report (ECF No. 243, pp. 11-18, ¶¶ 27-41). His convictions are numerous and serious beginning when he was 18 years of age and ending with the offenses of conviction when he was 44. And, the offenses are serious: attempted robbery (1982); attempted burglary (1983); attempted perjury (1983); concealing a deadly weapon (1988); petty larceny (1990); attempted robbery in the second degree (1990); obtaining transportation with intent to defraud (1992); possession with intent to sell and deliver heroin (1999); possession of a firearm by a felon (2000); possession of a firearm by a felon (2003). In sum, Lynn has been engaged in criminal activity for most of his life, being crime free generally only when incarcerated.

These 3553(a) factors are addressed by the United States in a cursory fashion. They thus require more complete treatment.

4.   **The Rehabilitation Issue**

The analysis then turns to Lynn's arguments respecting his post-conviction rehabilitation. Lynn has been confined for approximately fifteen years. It is obvious from the record that he has taken advantage of programming while incarcerated and has worked toward rehabilitation. Specifically, he was employed in the Unicor program, worked as an orderly, and was successful in reducing his PATTERN score to a low. Additionally, he has been

enrolled in a variety of cognitive behavioral programs and has participated in programs addressing the question of recidivism. And, he has good family support.

The United States does not appear to contest any of the showing made by Lynn respecting his claim to rehabilitation. Thus, the United States is silent on this important issue. So further briefing of it is required as well.

5.  **The Health Issue**

Lynn's papers present questions respecting his health, physical and mental. Neither side provides sufficient or helpful discussion on those issues. So additional briefing is required on this issue as well.

For the foregoing reasons, the REPLACEMENT MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT AND 18 U.S.C. §§ 3582(c)(1)(A) & (c)(2) (ECF No. 286) will be denied without prejudice.

It is so ORDERED.

/s/  REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 16, 2024

13